United States District Court
Northern District of California

1
2
3
4 UNITED STATES DISTRICT COURT
5 NORTHERN DISTRICT OF CALIFORNIA
6 SAN JOSE DIVISION
7

8 APPLE INC.,

         Plaintiff,

9

      v.

10

11 ALLAN & ASSOCIATES LIMITED, et al.,

         Defendants.

12

Case No. 5:19-cv-8372-EJD

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND**

Re: Dkt. No. 16

13      Plaintiff Apple Inc. designs, markets, and sells computers, tablets, and phones. In an effort

14 to combat the flow of electronics into landfills, Plaintiff established an environmentally friendly

15 recycling program whereby Apple consumers can trade in or turn over their used devices to

16 Plaintiff and Plaintiff will arrange for eco-friendly destruction and recycling of the device.

17 Because Apple parts are valuable and sought-after, Plaintiff hired Defendant Allan & Associates

18 Limited ("AAL") to oversee and secure the recycling process. Specifically, pursuant to the

19 Parties' contract, Defendant AAL was supposed to witness, in-person, the destruction of Apple

20 devices to ensure that during the recycling process, device-components are not stolen and then

21 sold on the black market. Defendant AAL allegedly breached this contract.

22      Under an "alter ego" theory, Plaintiff alleges Defendants A2 Global Risk Limited ("A2")

23 and Bradley James Allan ("Allan") are liable for Defendant AAL's breach. Defendants allege that

24 this Court lacks personal jurisdiction over Defendants A2 and Allan and that the applicable statute

25 of limitations bars Plaintiff's claim. Accordingly, Defendants move this Court to dismiss

26
27

Plaintiff's complaint. Having considered the Parties' briefs,[1] the Court **GRANTS** Defendants' motion to dismiss.

## I. BACKGROUND

### A. Factual Background

#### 1. The Relationship Among AAL, A2, and Mr. Allan

Plaintiff alleges that "each defendant is and was the agent and/or alter ego of each other defendant." *Id.* ¶ 12. Defendant Allan resides in Hong Kong, China. Complaint for Breach of Contract ("Compl.") ¶ 7, Dkt. 27. He is the founder and sole shareholder and director of both AAL and A2. *Id.* Defendant AAL is a security and crisis management consulting company that is organized, located, and headquartered in Hong Kong, China. *Id.* ¶ 8. Defendant A2 is a security risk management consulting company also headquartered in Hong Kong, China. *Id.* ¶ 9. Both companies have their principal places of business in Hong Kong, though (notably) at different addresses. *See id.* ¶¶ 8, 9.

Plaintiff contends AAL and A2 are "the same company" and thus are responsible for each other's debts. *Id.* ¶ 10. As support, Plaintiff cites the following:

- In April 2016, Defendant AAL listed A2 as a "service" on its website. *Id.*
- On August 8, 2018, Defendant Allan indicated the companies were a single company by referring them as "Allan & Associates / A2 Global Risk" in a post on his LinkedIn profile. *Id.*
- Until recently, the AAL website redirected visitors to the A2 website. *Id.*
- AAL and A2 have all or substantially the same employees and the companies conduct the same business. *Id.*

#### 2. Plaintiff and Defendant AAL's Services Agreement

As stated, this case arises out of Plaintiff's E-Waste program. *Id.* ¶¶ 14–17. On March 1, 2012, Plaintiff hired Defendant AAL to oversee the recycling process discussed above. Plaintiff

---

[1] Pursuant to N.D. Cal. Civ. L.R. 7-1(b), this Court found this motion suitable for consideration without oral argument. *See* Dkt. 31.

Case No.: 5:19-cv-08372-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND
2

sent its materials to a specialized recycling company ("the Recycling Company"). *Id.* ¶ 18. Pursuant to the Services Agreement, Defendant AAL was supposed to enforce certain security measures at this facility. *Id.* Specifically, the Agreement required Defendant AAL to (1) escort the product, (2) verify product types, quantities, and weights, (3) verify packaging materials and seals, (4) verify recycling processes and outcomes, and (5) secure the product. *Id.* ¶ 19. This meant that Defendant AAL had to "accompany" vehicles carrying Apple products, be "on-site" for verifications, and have a "physical presence" while "observing and documenting" the recycling process. *Id.* ¶¶ 19–21. These provisions ensured that AAL employees would witness (in-person) the destruction of Apple materials so as to protect Apple's parts and products from theft and disclosure to third parties. *Id.* ¶¶ 22–23. Defendant AAL also had to submit signed certifications confirming that it complied with all security measures required under the Agreement. *Id.* ¶ 25.

In September 2013, Plaintiff began sending materials for destruction and recycling to the Recycling Company. *Id.* ¶ 26. Defendant AAL sent Plaintiff regular "On-Site Destruction Reports," which contained certification that Defendant AAL was performing its obligations under the Agreement, *i.e.*, Defendant AAL certified that its employees were "in-person" witnessing and overseeing the destruction and recycling process and following other security measures. *Id.* ¶ 26 ("The On-Site Destruction Reports specifically stated that 'Allan & Associates have audited the destruction of [specific shipments] in order to obtain adequate assurance regarding the undertaken procedures and conditions' and noted the number of pallets of Apple parts that had been 'destroyed beyond use by the' Recycling Company personnel." (alteration in original)). From September 2013 through 2016, Defendant AAL submitted monthly invoices for work performed under the Parties' contract. *Id.* ¶ 27. Plaintiff paid each invoice. *Id.*

In "late" 2015, Plaintiff began to notice discrepancies in its data and thought that Recycling Company employees may be stealing Apple parts. *Id.* ¶ 29. Members of Plaintiff's audit compliance and global security team visited the Recycling Company's recycling facility to conduct an investigation. *Id.* ¶ 30. There, Plaintiff learned that Recycling Company employees were stealing Apple parts and finished devices, including large quantities of the main logic

boards.[2] *Id.* ¶¶ 29, 30. Plaintiff's investigation revealed that Recycling Company employees were able to circumvent Plaintiff's security measures because Defendant AAL did not witness the destruction process. *Id.* ¶30. In other words, Defendant AAL allegedly did not perform its obligations under the Services Agreement. *Id.* Specifically, Plaintiff contends that while AAL employees were on-site at the Recycling Center facilities, they did not watch the recycling process to confirm that Apple's materials were destroyed. *Id.* ¶ 31. Instead, AAL employees would weigh the material at the beginning and end of the recycling process; thus certifying only the weight of the products. *Id.* When AAL employees left, Recycling Company employees allegedly would steal valuable Apple product and then fill boxes with a mix of Apple and non-Apple scrap material so that the beginning and end weights matched. *Id.* Plaintiff alleges that it discovered Defendant AAL's breach "at the end of 2015." *Id.* ¶ 30.

### B. Procedural History

On November 15, 2019, Plaintiff filed its Complaint in Santa Clara County Superior Court. Defendants removed the case to federal court. *See* Dkt. 1. On January 17, 2020, Defendants filed their motion to dismiss Plaintiff's Complaint arguing that Plaintiff has not (and cannot) establish personal jurisdiction over Defendants A2 and Allan and that Plaintiff's claim is barred by the statute of limitations. Motion to Dismiss ("Mot."), Dkt. 16. Plaintiff filed an opposition on February 18, 2020. Opposition to Motion to Dismiss ("Opp."), Dkt. 20. On February 25, 2020, Defendants filed their reply. Reply re Motion to Dismiss ("Reply"), Dkt. 30.

## II. LEGAL STANDARDS

### A. Personal Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(2), defendants may move to dismiss for lack of personal jurisdiction. While the plaintiff bears the burden of showing that the Court has personal jurisdiction over the defendant, the court "resolves all disputed facts in favor of the

---

[2] Main logic boards are an integral (and the most expensive) part of a finished device. Without the main logic board, a phone will not run iOS, the operating system that allows an iPhone to work. Hence, main logic are valuable parts of iPhones. Compl. ¶ 29.

plaintiff." *See Pebble Beach Co.v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006) (quotation marks and citation omitted). The Court may consider evidence presented in affidavits and declarations in determining personal jurisdiction. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977); *but see Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) ("When a district court acts on a defendant's motion to dismiss under Rule 12(b)(2) without holding an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss. That is, the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." (citations omitted)). "The plaintiff cannot simply rest on the bare allegations of its complaint, but uncontroverted allegations in the complaint must be taken as true." *Matrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (quotation marks and citation omitted). "The Court may not assume the truth of allegations that are contradicted by affidavit." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 27 F. Supp. 3d 1002, 1008 (N.D. Cal. 2014) (citing *Data Disc, Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977)).

In a diversity action, like this one, a court may exercise personal jurisdiction over a non-resident defendant[3] if jurisdiction is proper under California's long-arm statute and if the exercise of that jurisdiction does not violate federal due process. *Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.*, 103 F.3d 888, 893 (9th Cir. 1996). Because California's long-arm statute authorizes the court to exercise personal jurisdiction over a non-resident defendant on any basis not inconsistent with the California or federal Constitution, the statutory and constitutional inquiry merge into a single due process test. *See* Cal. Code Civ. Proc. § 410.10.

Due process requires that a non-resident defendant have "certain minimum contacts" with the relevant forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *In re Cathode*, 27 F. Supp. 3d at 1008 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). If a defendant has sufficient contacts with the forum, personal jurisdiction may be either general or specific. *See id.* The relevant forum for this case's

---

[3] Defendants notice of removal is premised on diversity jurisdiction. *See* Dkt. 1 at ¶ 1. There is no dispute between the Parties that Defendants are out-of-state residents.

Case No.: 5:19-cv-08372-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND
5

minimum contacts analysis is California.

### B. Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing Federal Rule of Civil Procedure 8(a)(2)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The requirement that the court "accept as true" all allegations in the complaint is "inapplicable to legal conclusions." *Id.* If there are two alternative explanations, one advanced by the defendant and the other advanced by the plaintiff, both of which are plausible, the "plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Dismissal can be based on "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## III.  DISCUSSION

### A. Motion to Dismiss for Lack of Personal Jurisdiction

As established, a court may exercise jurisdiction over a non-resident defendant only if the court has general or specific personal jurisdiction over that defendant.[4] *See Bristol-Myers Squibb Co. v. Superior Court of Cal., S.F. Cty.*, 137 S. Ct. 1773, 1779–80 (2017). Constitutional due process is satisfied when a non-resident defendant has "certain minimum contacts" with the forum. *Int'l Shoe*, 326 U.S. at 316. "A court exercises specific [personal] jurisdiction where the cause of action arises out of or has a substantial connection to the defendant's contacts with the forum." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir

---

[4] General personal jurisdiction is satisfied when the defendant is "fairly regarded at home." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780. Paradigm examples include an "individual's domicile" or, for corporations, "an equivalent place, one in which the corporation is fairly regarded at home," *i.e.* its state(s) of incorporation or its principal place of business. *Id.* The pleading and accompanying declarations and affidavits do not indicate that Defendants A2 or Allan are "fairly regarded at home" in California. Moreover, Plaintiff does not argue that this Court has general personal jurisdiction over Defendants A2 and Allan. The Court thus does not analyze the applicability of general personal jurisdiction.

Case No.: 5:19-cv-08372-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND

2002). In the Ninth Circuit, courts apply a three-part test to evaluate the propriety of exercising specific jurisdiction: (1) whether the defendant purposefully availed himself of the privileges of conducting activities in the forum; (2) whether the claim arises out of or results from the defendant's forum-related activities; and (3) whether the exercise of jurisdiction is reasonable. *Id.*

There is no dispute that under this test, the Court has specific personal jurisdiction over Defendant AAL. The Parties instead dispute whether the Court has specific personal jurisdiction over Defendants A2 and Allan. Plaintiff argues that because Defendants A2 and Allan are alter egos of, or in an agency relationship with, Defendant AAL, the Court can exercise specific personal jurisdiction over each defendant. Opp. at 6. Alternatively, Plaintiff argues that Defendant Allan has purposefully availed himself to the forum and so jurisdiction is proper on this basis as well. *Id.* The Court addresses these arguments in turn.

### 1. Alter-Ego Theory

Plaintiff argues that it has alleged sufficient facts in its Complaint to demonstrate that Defendants A2 and Allan are alter egos of Defendant AAL. *Id.* at 7. Although jurisdiction over a subsidiary does not automatically provide jurisdiction over a parent, where the parent "totally controls the actions of the subsidiary so that the subsidiary is the mere alter ego of the parent, jurisdiction is appropriate over" both parent and subsidiary. *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1069 n.17 (9th Cir. 2000). Indeed, under the federal law governing the exercise of personal jurisdiction, if a corporation is the alter ego of an individual defendant, or one corporation the alter ego of another, "the Court may 'pierce the corporate veil' jurisdictionally and attribute 'contacts' accordingly." *ADO Fin., AG v. McDonnell Douglas Corp.*, 931 F. Supp. 711, 716 (C.D. Cal. 1996) (quoting *Certified Building Prods., Inc. v. NLRB*, 528 F.2d 968, 969 (9th Cir. 1976). Hence, the relevant inquiry is whether Plaintiff has plead sufficient facts to establish that Defendants A2 and Allan are the alter egos of Defendant AAL.[5]

---

[5] The Parties dispute what law applies to answer this question. Defendants contend that Hong Kong law governs the analysis. Mot. at ECF 14. Plaintiff argues that California law applies. Opp. at 7. Under California's "governmental interest" choice of law test, the court first determines if the competing jurisdictions' laws differ with regard to the particular issue. *Kearney v. Salomon*

### a. Unity of Interest Factors

Under California law, to apply the alter ego doctrine, the court must determine that the plaintiff has made out a prima facie case that (1) there is such unity of interest and ownership that the separate personalities of the corporation and the individuals no longer exist and (2) failure to disregard the corporation would result in fraud or injustice. *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1021 (9th Cir. 2017). "Disregarding the corporate entity is recognized as an extreme remedy and courts will pierce the corporate veil only in exceptional circumstances." *Gonzalez v. Drew Indus. Inc.*, 2008 WL 11338569, at *1 (C.D. Cal. Apr. 1, 2008) (quoting *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995); *see also Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003) ("A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities."); *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 807 (9th Cir. 2002) ("[T]he alter ego rule is generally applied with caution."). Indeed, the unity of interest prong requires a showing that the alter ego was controlled to such a degree that it was a "mere instrumentality" of the principal. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015). The test envisions "pervasive control," such as when the principal dictates "every facet" of the alter ego's business, from "broad policy decisions to routine matters of day-to-day operation." *Id.* Total ownership and shared management are alone insufficient to establish the requisite level of control. *Id.*

To determine whether there is a sufficient unity of interest and ownership to support alter ego liability, courts consider factors like: commingling of funds, failure to maintain minutes or adequate corporate records, identification of the equitable owners with the domination and control of the two entities, the use of the same office or business locations, the identical equitable ownership of the two entities, the use of a corporation as a mere shell, instrumentality or conduit

---

*Smith Barney, Inc.*, 137 P.3d 914, 922 (Cal. 2006). If the rules are the same, the court may apply California law. *Frontier Oil Corp. v. RLI Ins. Co.*, 63 Cal. Rptr. 3d 816, 831 (Ct. App. 2007). Hong Kong law is largely analogous to California law. *See* Mot. at ECF 14 n.2. Because the rules are the same and thus there is no conflict between Hong Kong law and California law, California law governs.

for a single venture or the business of an individual, and failure to adequately capitalize a corporation. *Pac. Mar. Freight, Inc. v. Foster*, 2010 WL 3339432, at *6 (S.D. Cal. Aug. 24, 2010); *see also Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040 (N.D. Cal. 2014). There is, however, "no litmus test to determine when the corporate veil will be pierced." *Pac. Bell Tel. Co. v. 88 Connection Corp.*, 2016 WL 3257656, at *3 (N.D. Cal. June 14, 2016). Piercing depends on "the circumstances of each particular case." *Id.*

Plaintiff has not met its prima facie burden. Plaintiff argues their complaint creates a plausible inference of a unity of interest among Defendants because they have alleged:

- Defendant Allan is the founder, sole shareholder, and managing director of both AAL and A2. Compl. ¶ 7.

- Defendants AAL and A2 are advertised as the same entity as demonstrated by: A2 being listed as a "service" of A2 on the A2 website, Defendant Allan referring to AAL and A2 as a single company on his LinkedIn account, and the AAL website redirecting visitors to A2's website. *Id.* ¶ 10.

- Defendants AAL and A2 share the same employees and conduct the same business. *Id.*

There are several issues with Plaintiff's allegations. First, it is well established that common ownership alone is insufficient to disregard the corporate form. *See e.g.*, *Stewart*, 81 F. Supp. 3d at 956. In the absence of evidence of actual control, courts generally presume that directors can and do "change hats" to represent each corporation separately. *Id.* (citing *United States v. Bestfood*, 524 U.S. 51, 69 (1998)). Second, noticeably missing is any allegation that Defendants failed to respect corporate formalities. There is no showing that Defendants AAL and A2 were undercapitalized or that their assets, accounts, and/or records were commingled. *See Ranza*, 793 F.3d at 1073–74 ("Ranza has presented no evidence that NEON is undercapitalized, that the two entities fail to keep adequate records or that Nike freely transfers NEON's assets, all of which would be signs of a sham corporate veil."); *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 984 (N.D. Cal. 2016) ("Plaintiffs' failure to address the other [] factors strongly weighs against finding that CVS Pharmacy's contacts should be imputed to CVS Health."). Third, even

Case No.: 5:19-cv-08372-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND
9

while Plaintiff alleges that Defendants AAL and A2 share employees, Plaintiff does not (and cannot) allege that Defendants AAL and A2 share the same offices. *See Stewart*, 81 F. Supp. 3d at 955 (combining the analysis of whether "the entities use the same offices and employees); Compl. ¶¶ 8, 9 (alleging that Defendants AAL and A2 have different offices).

Further, Defendant Allan's sworn and unrebutted declaration establishes that AAL and A2 are (1) distinct business entities, (2) provide different types of services in different geographical regions, (3) do not share the same employees, (4) have always maintained the appropriate corporate formalities, (5) have always been adequately capitalized to meet their ongoing operational and financial obligations, (6) have always maintained separate bank accounts and never commingled assets or funds, (7) have always maintained separate corporate records, and (8) have always paid their own expenses. Declaration of Bradley J. Allan ("Allan Decl.") ¶¶ 12–25, 28, Dkt. 26. This evidence establishes that Defendants AAL, Allan, and A2 are not alter egos. *See Stewart*, 81 F. Supp. 3d at 956 (using an unrebutted declaration to overcome a complaint's allegations); *Data Disc*, 557 F.2d at 1285 (court may consider evidence presented in affidavits and declarations in determining personal jurisdiction).

Plaintiff attempts to rebut this by relying on *Monaco v. Liberty Life Assurance Co.*, 2007 WL 1140460 (N.D. Cal. Apr. 17, 2007) and *IHFC Props., LLC v. APA Mktg., Inc.*, 850 F. Supp. 2d 604 (M.D.N.C. 2012). Opp. at 10. In Plaintiff's view, because alter ego and agency liability theories are highly fact intensive, Defendants' attacks on Plaintiff's Complaint are premature and inappropriate at the pleadings stage. *Id.* Plaintiff further argues that the Court cannot rely on Defendant Allan's declarations because it must take Plaintiff's allegations as true and draw inferences in Plaintiff's favor. *Id.*; *but see Matrix Photo*, 647 F.3d at 1223 ("The plaintiff cannot simply rest on the bare allegations of its complaint, but uncontroverted allegations in the complaint must be taken as true."). Neither *Monaco* nor *IHFC Properties* support Plaintiff's position.

First, the *Monaco* court denied the defendant's Rule 12(b)(6) motion to dismiss the plaintiff's alter ego and agency liability theories because, viewing the pleadings in the light most

Case No.: 5:19-cv-08372-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND
10

favorable to the plaintiff, the court found that the plaintiff stated a claim. *See Monaco*, 2007 WL 1140460 at *2. This Court, however, is analyzing Defendants' Rule 12(b)(2) motion to dismiss. The Court is *not* analyzing a <u>Rule 12(b)(6)</u> motion to dismiss.[6] Indeed, in contrast to *Monaco*, the Court is determining, pursuant to Rule 12(b)(2), whether it must dismiss Defendants A2 and Allan for lack of personal jurisdiction. Rule 12(b)(6) and Rule 12(b)(2) are different inquiries. *Compare Data Disc*, 557 F.2d at 1285 (allowing the court to consider evidence presented in affidavits and declarations to determine personal jurisdiction); *Matrix Photo*, 647 F.3d at 1223 (noting that on a motion to dismiss for lack of personal jurisdiction, the plaintiff cannot simply rest on the bare allegations of its complaint), *with Ashcroft*, 556 U.S. at 678 (requiring the court to accept as true all plausible factual allegations).

Second, the *IFHC Properties* court declined to rely on the defendants' "self-serving" declarations because it held that the plaintiff met its prima facie burden of establishing liability. *See IFHC Props.*, 850 F. Supp. 2d at 621; *see also Ballard*, 65 F.3d at 1498 ("[T]he plaintiff need make only a *prima facie showing of jurisdictional facts* to withstand the motion to dismiss [if the courts acts on the Rule 12(b)(2) motion to dismiss without holding an evidentiary hearing]." (emphasis added)). In contrast, here, Plaintiff has not met its prima facie burden of showing that Defendants are alter egos. *See supra*. *Ranza* highlights this point. In *Ranza*, the Ninth Circuit held that the parent and subsidiary companies were not alter egos even though the parent exercised control over the subsidiary's budget, established general human-resources policies that the subsidiary had to follow, was involved in some of the subsidiary's hiring decisions, was involved in the subsidiary's product branding, and required some subsidiary-company employees to report to parent-company employees. 793 F.3d at 1074.

Plaintiff alleges significantly fewer facts than the plaintiff in *Ranza* to show alter-ego liability—all that Plaintiff alleges is that one LinkedIn post "treated" AAL and A2 as the same

---

[6] Plaintiff commits this same error when it discusses the applicability of *Ultratech, Inc. v. Ensure NanoTech (Beijing), Inc.*, 108 F. Supp. 816 (N.D. Cal. 2015). *See* Opp. at 9–10. In *Ultratech*, when the Court discusses the applicability of the alter ego doctrine, it does so outside the personal jurisdiction context. This case is thus similarly unpersuasive.

Case No.: 5:19-cv-08372-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND
11

company, that the AAL website redirected to the A2 website, that A2 was listed as a "service" on the AAL website and that Defendant Allan owned both companies. That Defendant Allan "controlled" employee movement and the direction of both companies is insufficient to show that Defendants A2 and/or Allan "dictated every facet" of AAL's business. *Cf.* Opp. at 10–11 n.6; Compl. ¶¶ 10, 12, 41 (alleging that Defendant Allan had "sole control"[7] over AAL but not alleging how that control was exerted); *see also Kellman v. Whole Foods Mkt. Inc.*, 313 F. Supp. 3d 1031, 1047 (N.D. Cal. 2018) ("The plaintiffs here do not assert, even in unsworn allegations, that WFMI "'dictates every facet of [its subsidiaries'] business,' including 'routine matters of day-to-day operation'" more than the parent company in *Ranza* did, so as to render the Whole Foods entities alter egos where the *Ranza* entities were not." (quoting *Ranza*, 793 F.3d at 1074). Accordingly, because Plaintiff has not met its prima facie burden to show unity of interest, *IFHC Properties* is not persuasive and the Court may use Defendant Allan's declaration to find that Defendants are not alter egos.

### b. Inequitable Result

Even if Plaintiff had met its prima facie burden of showing unity of interest, Plaintiff has not established that an inequitable, fraudulent, or unjust result will follow if either A2 or Allan does not appear in this matter. *See Stewart*, 81 F. Supp. 3d at 956; *see also Successor Agency to Former Emeryville Redevelopment Agency v. Swagelok Co.*, 364 F. Supp. 3d 1061, 1082 (N.D. Cal. 2019) ("The second requirement for alter ego liability is that there must be 'an inequitable

---

[7] It is worth mentioning that Defendant Allan is the sole director and shareholder of AAL. Thus, the fact that he controlled the decisions of AAL is insignificant—by default, as the sole director and shareholder, he had to control those decisions. But, not every sole shareholder/director is personally liable for the corporation's decisions. A contrary finding would eradicate the corporate form. *Cf. Dole Food*, 538 U.S. at 474 ("A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities."); *Playboy Enters.*, 279 F.3d at 807 (noting that the alter ego rule is applied with caution). Thus, that Defendant Allan made decisions on behalf of Defendant AAL is not persuasive. It would be more persuasive if there was some showing that Defendant Allan disregarded the corporate form by failing to have meetings and/or undercapitalizing AAL. There is no allegation of this and thus there is no reason to use the "radical remedy" of piercing the corporate veil. *Cf. Sea-Land Servs., Inc. v. Pepper Source*, 941 F.2d 519, 520 (7th Cir. 1991) ("[T]here must be such unity of interest and ownership that the separate personalities of the corporation and the individual [or other corporation] no longer exist.").

result if the acts in question are treated as those of the corporation alone." (quotation marks and citation omitted)).  Plaintiff alleges that if Defendant AAL's acts are not attributed to Defendant Allan, the Court will sanction fraud and promote injustice by allowing Defendant Allan to escape personal liability for debts owed to Plaintiff.  Compl. ¶ 41.  This is the only paragraph in the complaint that relates to injustice.

There are several problems with Paragraph 41 of the Complaint.  First, it says nothing about Defendant A2.  *See Successor Agency to Former Emeryville Redevelopment Agency*, 364 F. Supp. 3d 1078 (prima facie burden requires a showing of both unity of interest *and* inequitable result).  The question thus becomes what fraud or injustice will result if the Court declines to find that Defendant A2 is an alter ego of Defendants Allan and/or AAL.  Without an allegation addressing this question, Plaintiff has not met its prima facie burden as to Defendant A2.  *See id.*  Second, courts have "rejected a plaintiff's attempts to argue that an allegation of unjust enrichment is enough to meet the inequitable result prong where the plaintiff alleges no facts explaining *how* the alleged alter ego benefited from the purported misconduct." *Johnson v. Serenity Transp., Inc.*, 141 F. Supp. 3d 974, 986 (N.D. Cal. 2015).  Plaintiff alleges only that Defendant Allan will be unjustly enriched.  *See* Compl. ¶ 41 (alleging Defendant Allan will be able to escape personal debts if the corporate veil is not pierced).  Finally, and most damning, Plaintiff never alleges, nor is there any evidence, that Defendant AAL cannot answer Plaintiff's claim and/or pay any potential judgment.  *See Stewart*, 81 F. Supp. 3d at 956–57 (declining to find an inequitable result where the defendant before the Court could answer the plaintiff's claim and satisfy any potential judgment).  Accordingly, Plaintiff has not shown that an injustice will result if the corporate veil is not pierced.

## 2.  Agency Theory

Plaintiff next argues that Defendants A2 and Allan are subject to this Court's jurisdiction as a result of their agency relationship with Defendant AAL.  Opp. at 11.  Before the Supreme Court's decision in *Daimler AG v. Bauman*, 571 U.S. 117 (2014), the Ninth Circuit permitted a plaintiff to pierce the corporate veil for jurisdiction purposes under either the "agency" test or the

"alter ego" test. *Ranza*, 793 F.3d at 1071. The agency test required a plaintiff to show that the subsidiary performed "services that [were] sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services." *Id.* (alteration in original) (quoting *Doe v. Unocal Corp.*, 248 F.3d 915, 928 (9th Cir. 2001), *abrogated by Williams*, 851 F.3d 1015). The Supreme Court held that the agency test could not be used as a means to establish general personal jurisdiction. *Daimler AG*, 571 U.S. at 135–36 ("[T]he inquiry into importance stacks the deck, for it will always yield a pro-jurisdiction answer: Anything a corporation does through an independent contractor, subsidiary, or distributor is presumably something that the corporation would do 'by other means' if the independent contractor, subsidiary, or distributor did not exist.").

In *Williams*, the Ninth Circuit held that *Daimler*'s reasoning "applies no less in the context of specific jurisdiction." 851 F.3d at 1024 ("[T]he *Daimler* Court's criticism of the [agency test] found fault with the [test's] own internal logic, and therefore applies with equal force regardless of whether the standard is used to establish general or specific jurisdiction."). Plaintiff does not cite any precedent to the contrary. *See* Opp. at 11–12.

One court in this District held that to the extent the agency theory remains viable in the specific personal jurisdiction context, it operates like the alter ego test. *See Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co.*, 2015 WL 4755335, at *5 (N.D. Cal. Aug. 11, 2015). There, the court first determined that *Daimler*'s reasoning applies equally in the context of specific personal jurisdiction. *Id.* Next, the court held that even assuming the agency test remains viable in the specific jurisdiction context, the relevant question to ask is whether the relationship between the parent and subsidiary is typified by "parental control of the subsidiary's internal affairs or daily operations." *Id.* Hence, the agency inquiry is identical to the alter ego inquiry. Much like the *Los Gatos Mercantile* court, this Court holds that, to the extent the agency test survived *Daimler*, it did so only to test whether the parent corporation exercises "pervasive control." Having held above that Plaintiff has not demonstrated alter-ego liability, the Court declines to reengage in the identical agency analysis.

Case No.: 5:19-cv-08372-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND

14

United States District Court
Northern District of California

### 3. Defendant Allan's Specific Activities with the Forum

Plaintiff last attempts to establish personal jurisdiction over Defendant Allan by arguing that Defendant Allan purposefully directed activities toward this forum. Opp. at 12–13.

In order to establish personal jurisdiction over Defendant Allan, Plaintiff must show that Defendant Allan purposefully availed himself of the benefits of the forum. *See Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). Plaintiff has not met this burden. In order to show that Defendant Allan purposefully availed himself to the forum, Plaintiff points to actions Defendant Allan undertook *on behalf of AAL*. *See* Opp. at 12–13. For instance, Plaintiff argues Defendant Allan purposefully availed himself to the forum by:

- Signing the Services Agreement on behalf of Defendant AAL in the forum. Compl. ¶ 18.
- Performing essential portions of the Services Agreement in the forum, like sending certifications, reports, and invoices on behalf of AAL to Plaintiff. *Id.* ¶¶26–27, 38 (alleging that AAL sent Plaintiff regular reports and monthly invoices).
- Receiving payment from the forum. *Id.* ¶ 38.
- Handling and overseeing the destruction of goods that originated in the forum. *Id.* ¶¶ 19–21 (alleging that the Services Agreement's purpose was to ensure that AAL and its employees would witness in-person the destruction of goods).

None of these alleged acts of purposeful availment show that Defendant Allan *personally* availed himself of the benefits of the forum. Rather, all that these acts show is that Defendant AAL availed itself to the forum (something that AAL does not dispute). Moreover, the contract that forms the basis of Defendant Allan's contacts with the forum is inapposite—Defendant Allan was not a party to the AAL-Apple Contract. *See* Allan Decl., Ex. A at ECF 11 ("This Services Agreement . . . is made and entered into by and between Apple Inc., . . . and Allan & Associates . . . ."). Defendant Allan plainly did not avail himself to the forum by signing the contract or performing under the contract on behalf of AAL. A contrary finding would allow plaintiffs to assign a corporation's contacts to the corporation's directors and officers in contravention of the alter-ego/agency test. This would eradicate the corporate form and the

boundaries that the Supreme Court, the Ninth Circuit, and courts in this District have placed on personal jurisdiction. The Court thus declines to find that Defendant Allan purposefully availed himself to the forum by acting on behalf of Defendant AAL. *See supra* n.7; *Daimler AG*, 571 U.S. at 135–36 (holding that agency test as applied to general personal jurisdiction was improper as it "will always yield a pro-jurisdiction answer").[8]

### 4. Jurisdictional Discovery

Plaintiff argues that it needs jurisdictional discovery to examine whether A2 and AAL are adequately capitalized, observe corporate formalities, and have different employees. Opp. at 14 & n.7. The district court has discretion to allow a plaintiff to conduct jurisdictional discovery. *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n. 24 (9th Cir.1977). Requests for such discovery should be granted "where pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary." *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986). A district court, however, need not allow jurisdictional discovery where "it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction," unless there are contested jurisdictional facts or more facts are needed. *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003).

The Court declines to allow specific jurisdictional discovery. The only jurisdictional theory that is potentially viable is the alter ego theory. However, even if through discovery Plaintiff could establish a unity of interest, there are no facts that could assist Plaintiff in establishing the inequitable result requirement because AAL—a viable defendant—remains before the Court. *See Stewart*, 81 F. Supp. 3d at 959.

---

[8] Plaintiff also relies on the three part "effects test" to establish jurisdiction. This is improper. It is "well established that the *Calder* [effects] test applies only to intentional torts, not to the breach of contract . . . claim[] presented here." *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007). The Court thus declines to use the effects test.

Case No.: 5:19-cv-08372-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND
16

**B. Motion to Dismiss for Failure to State a Claim**

Defendant AAL[9] next contends that Plaintiff's breach of contract cause of action must be dismissed because the action is time-barred. Mot. at ECF 18. Plaintiff argues that Defendant AAL improperly relies on extrinsic evidence to prove this. Opp. at 16. Plaintiff also argues that nothing on the face of the Complaint establishes that the statute of limitations expired or prevents Plaintiff from proving that the statute was tolled. *Id.* In fact, Plaintiff's theory is that the statute of limitations was tolled pursuant to the delayed discovery rule and/or fraudulent concealment. *Id.*

The statute of limitations defense may be raised in a motion to dismiss if the running of the statute is apparent from the face of the complaint. *See Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) (collecting cases); *see also Yamauchi v. Cotterman*, 84 F. Supp. 993, 1004 (N.D. Cal. 2015) ("A plaintiff fails to state a claim, and therefore dismissal is appropriate, where his failure to comply with the applicable statute of limitations is evident from the allegations of the complaint."). To grant a Rule 12(b)(6) motion on the basis of a statute of limitations defense, the facts establishing that defense must be "definitively ascertainable from the complaint and other allowable sources of information, and [] suffice to establish the affirmative defense with certitude." *Alexsam, Inc. v. Green Dot Corp.*, 2016 WL 7261538, at *2 (C.D. Cal. Dec. 13, 2016).

The statute of limitations for Plaintiff's breach of contract claim is four-years. Cal. Code Civ. Proc. § 337(a). Under California law, in general, "in ordinary tort and contract actions, the statute of limitations . . . begins to run upon the occurrence of the last element essential to the cause of action." *April Enters., Inc. v. KTTV & Metromedia*, 195 Cal. Rptr. 421, 432 (Ct. App. 1983) (citation omitted). Plaintiff does not specifically allege when Defendant AAL's breach occurred, but it does allege that the conduct giving rise to the alleged breach occurred sometime between September 2013 and September 2015. *See* Compl. ¶ 26. Thus, under the "general" rule, Plaintiff's claim expired before it filed its November 15, 2019 complaint.

---

[9] Defendants A2 and Allan also argue that the Court should dismiss the action for failure to state a claim. However, having decided that the Court lacks personal jurisdiction over Defendants A2 and Allan, the Court confines its analysis to Defendant AAL.

Case No.: 5:19-cv-08372-EJD

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

Plaintiff does not dispute that under the "general" rule, its claim expired before it filed the Complaint. Instead, Plaintiff argues that the discovery rule tolls the statute of limitations. The discovery rule ameliorates the harshness of the general statute of limitations rule. *El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1039 (9th Cir. 2003). The "discovery rule may be applied to breaches which can be, and are, committed in secret and, . . . where the harm flowing from those breaches will not be reasonably discovered by plaintiffs until a future time." *April Enters.*, 195 Cal. Rptr. at 437. The discovery rule tolls the statute of limitations "until a plaintiff knew or should have known of the wrongful conduct at issue." *Id.*; *see also Aryeh v. Canon Bus. Sols.*, 292 P.3d 871, 875 (Cal. 2013) ("[T]he discovery rule, where applicable, postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." (quotation marks and citation omitted)). The rule only applies "in narrow cases involving fraud . . . misrepresentation" or situations where "[t]he injury or act causing the injury, or both, have been difficult for the plaintiff to detect." *April Enters.*, 195 Cal. Rptr. at 435, 436. "In order to invoke the delayed discovery exception to the statute of limitations, the plaintiff must specifically plead facts which show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *In re Conseco Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 2008 WL 4544441, at *8 (N.D. Cal. Sept. 30, 2008) (quoting *Saliter v. Pierce Bros. Mortuaries*, 146 Cal. Rptr. 271, 274 (Ct. App. 1978)).

While Plaintiff alleges that Defendant AAL mislead Plaintiff by submitting false certifications, see Compl. ¶ 3, thus bringing Plaintiff's breach of contract claim within the realm of delayed discovery tolling, Plaintiff does not plead sufficient facts to invoke the delayed discovery doctrine. The Complaint fails to establish *when* Plaintiff discovered Defendant AAL's alleged breach. Indeed, the Complaint alleges only that "[i]n *late* 2015, Apple discovered that Recycling Company employees had been stealing Apple parts and finished devices," see Compl. ¶ 29 (emphasis added), and that "[a]t the *end* of 2015, members of Apple's audit compliance and global security team visited the Recycling Company's Singapore recycling facility to investigate anomalies . . . . [and found] that AAL failed to perform its obligations under the Services

1    Agreement," see *id.* ¶ 30.  Noticeably missing from the Complaint is the date that Plaintiff

2    discovered the alleged breach.  The Court cannot quantify terms like "late 2015" or "at the end of

3    2015," which means the Court cannot determine if Plaintiff filed its Complaint within the "tolled"

4    window.  *See In re Conseco Ins.*, 2008 WL 4544441, at *8 (noting that a plaintiff must

5    "specifically plead facts" which show "the time and manner of discovery").  In its opposition,

6    Plaintiff, for the first time, states that it did not find out about the breach until November 16, 2015.

7    *See* Opp. at 18.  This argument lacks merit—it is "axiomatic that the complaint may not be

8    amended by the briefs in opposition to a motion to dismiss."  *See, e.g.*, *Frenzel v. AliphCom*, 76 F.

9    Supp.3d 999, 1009 (N.D. Cal. 2014) (quotation marks and citation omitted).

10        Moreover, even if Plaintiff "discovered" the breach on November 16, 2015, Plaintiff fails

11   to plead facts showing why it was unable to make an earlier discovery.  *See In re Conseco*, 2008

12   WL 4544441, at *8.  In fact, Plaintiff seems to allege facts indicating that it could have made an

13   earlier discovery.  For instance, Plaintiff alleges that it hired Defendant AAL to ensure that Apple

14   materials were not stolen.  *See* Compl. ¶ 3.  So, once Plaintiff learned that Recycling Company

15   employees were stealing Apple devices and parts, why was Plaintiff not on "notice" that

16   Defendant may have breached the Agreement?  *See id.* ¶¶ 4–5; *cf. Platt Elec. Supply, Inc. v. EOFF*

17   *Elec., Inc.*, 522 F.3d 1049, 1055 (9th Cir. 2008) (noting that tolling begins once the plaintiff is on

18   "inquiry notice"); *Jolly v. Eli Lilly & Co.*, 751 P.2d 923, 929 (Cal. 1988) ("[I]t is the discovery of

19   facts, not their legal significance, that starts the statute.").  The Court cannot apply the delayed

20   discovery rule without clarification as to when Plaintiff discovered the breach and why Plaintiff

21   was not on notice of the breach when it learned that Apple materials were being stolen.

22        Plaintiff argues in the alternative that the statute of limitations may be tolled by the

23   fraudulent concealment doctrine.  This doctrine permits tolling where the defendant "fraudulently

24   concealed the existence of a cause of action so that [the plaintiff], acting as a reasonable person,

25   did not know of its existence."  *Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 502

26   (9th Cir. 1988) (citation omitted); *see also Aryeh*, 292 P.3d at 875 ("The doctrine of fraudulent

27   concealment tolls the statute of limitations where a defendant, through deceptive conduct, has

28   Case No.: 5:19-cv-08372-EJD

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND

caused a claim to grow stale.").  To allege fraudulent concealment, a plaintiff must "plead with

particularity the facts giving rise to the fraudulent concealment claim and must establish that [he]

used due diligence in trying to uncover the facts [giving rise to his claims]."  *Yamauchi*, 84 F.

Supp. at 1007–08 (alterations in original) (quoting *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406,

1415—16 (9th Cir. 1987).

Plaintiff contends that by providing Plaintiff with reports and certifications certifying that

AAL employees were performing on-site certifications, Defendant AAL fraudulently concealed

the breach of contract cause of action.  This theory, however, fails for the same reasons discussed

above.  "A plaintiff alleging fraudulent concealment must establish that its failure to have notice of

its claims was the result of the affirmative conduct by the defendant."  *Conmar Corp.*, 858 F.2d at

505.  As established above, Plaintiff pleads that they knew about the breach by late/the end of

2015.  *See* Compl. ¶¶ 29, 30.  Plaintiff does not plead that *even after this*, they relied on Defendant

AAL's falsified reports.  *Cf. id.* ¶ 38.  Hence, the allegedly falsified reports do not toll the statute

of limitations as Plaintiff fails to plead that it lacked notice of the breach *because of* these reports.

To the contrary, the falsified reports are seemingly used as a means to bolster Plaintiff's claim that

it did not know about Defendants' breach until "the end of 2015."  Accordingly, neither the

discovery rule nor fraudulent concealment toll the statute of limitations.  Because Plaintiff has not

plead facts to support a tolling theory, its Complaint is barred under the four-year state of

limitations.[10]

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants A2 and Allan's motion to

dismiss for lack of personal jurisdiction.  Defendants A2 and Allan are dismissed from this action.

The Court **GRANTS** Defendant AAL's motion to dismiss for failure to state a claim upon which

---

[10] Because the Court holds that Plaintiff has not plead sufficient facts to show that it filed its claim within the applicable tolled statute of limitations period, the Court does not reach Plaintiff's argument that Defendant improperly relied on extrinsic evidence. *See* Opp. at 19–20.  Likewise, the Court declines to address Defendant's extrinsic evidence as Defendant has not properly put it before the Court. *See* Fed. R. Evid. 201(c)(2) (noting that a party must "request" the court to take judicial notice); *cf.* Mot. (declining to request the court to take judicial notice); Reply (same).

relief can be granted. When dismissing a complaint, a court should grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000). The Court finds amendment would not be futile. Accordingly, Plaintiff's claims are dismissed with leave to amend. Plaintiff may file an amended complaint by **May 6, 2020.** Plaintiff may not add new claims or parties without leave of the Court or stipulation by the parties pursuant to Federal Rule of Civil Procedure 15.

  **IT IS SO ORDERED.**

Dated: March 27, 2020

              _____

             EDWARD J. DAVILA
             United States District Judge